UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| TYRONNE CARTER<br><br>VERSUS<br><br>KEVIN BENJAMIN, ET AL. | CIVIL ACTION<br><br>NO.: 13-00016-BAJ-RLB<br>LEAD CASE<br><br>C/W 13-cv-00491-BAJ-RLB<br>13-cv-00278-BAJ-RLB |

## RULING AND ORDER

Plaintiff Tyrone Carter ("Plaintiff") filed the instant action pursuant to 42 U.S.C. § 1983 for alleged violations of his constitutional rights that occurred while he was housed at the Louisiana State Penitentiary in Angola, Louisiana. (Doc. 1). Specifically, Plaintiff alleges that prison officials failed to protect him from an inmate-on-inmate attack that occurred on February 5, 2012, despite knowing of "bad blood" between he and the other inmate. (Doc. 1 at p. 7).

Now before the Court is Defendants' **Motion for Partial Summary Judgment (Doc. 16)** filed by Warden Burl Cain, Assistant Warden Kevin Benjamin, and Colonel Chadwick Darbonne (collectively, "Defendants"), pursuant to Federal Rule of Civil Procedure ("Rule") 56, seeking dismissal of Plaintiff's claims against them. No opposition was filed. Oral argument is not necessary. The Court has jurisdiction pursuant to 28 U.S.C. § 1331.

1

I. BACKGROUND[1]

Plaintiff is an inmate sentenced to the custody of the Louisiana Department of Public Safety and Corrections. (Doc. 16-2 at ¶ 1). At all times pertinent to the instant claims, Plaintiff was incarcerated at the Louisiana State Penitentiary ("LSP") in Angola, Louisiana. (*Id.* at ¶ 2). On February 5, 2012, Plaintiff was involved in an aggravated fight with fellow inmate, Gary Landry, ("Landry") in the Interfaith Chapel located on prison grounds. (*Id.* at ¶ 3). Landry was seriously injured, losing more than two liters of blood. (*Id.* at ¶ 4).

Subsequent to the fight, an investigation was launched by Colonel Bobby Achord of LSP ("Col. Achord") and Detective Shannon Tilley of the West Feliciana Sheriff's Office.[2] (*Id.* at ¶ 5). As a result of that investigation, Col. Achord determined that Plaintiff fashioned a weapon composed of two razor blades melted between two toothbrushes. (*Id.* at ¶ 6). The investigation also revealed that Plaintiff violently attacked inmate Gary Landry with this weapon on February 5, 2012. (*Id.* at ¶ 7). At the conclusion of the investigation, the District Attorney for the Twentieth Judicial Court of the State of Louisiana, Samuel D'Aquilla, charged Plaintiff with Aggravated Second Degree Battery, in violation of Louisiana Revised Statute 14:34.7. (*Id.* at ¶ 8). Plaintiff was represented by

---

[1] In accordance with Rule 56 of the Local Rules of the United States District Court for the Middle District of Louisiana, Defendants submitted a Statement of Undisputed Facts along with its Motion for Summary Judgment. (Doc. 16-2). Because Plaintiff did not file an opposition to the instant motion, all of the facts contained in Defendants' Statement of Undisputed Facts will be deemed admitted for purposes of this Ruling and Order. *See* Local Rule 56(b) ("All material facts set forth in the statement required to be served by the moving party will be deemed admitted. . . unless controverted as required by this Rule.").

[2] The Court permitted Defendants to file the one-hundred-and-three-page Investigative Report regarding this matter under seal at this stage in the proceedings given the existence of confidential information regarding Plaintiff and inmate Gary Landry. (Docs. 17, 18).

counsel for this charge. (*Id.* at ¶ 9). Thereafter, Plaintiff entered a plea of *nolo contendere* and was sentenced to serve an additional three years in the custody of the Department of Corrections. (*Id.* at ¶ 10; Doc. 16-4). Plaintiff did not appeal this conviction. (*Id.* at ¶ 11; Doc. 16-5). Plaintiff's conviction has not been overturned by any subsequent action. (*Id.* at ¶ 12).

## II. STANDARD OF REVIEW

Pursuant to the Federal Rules of Civil Procedure, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In determining whether the movant is entitled to summary judgment, the court views the facts in the light most favorable to the non-movant and draws all reasonable inferences in the non-movant's favor. *Coleman v. Houston Independent School District*, 113 F.3d 528, 533 (5th Cir. 1997).

After a proper motion for summary judgment is made, the non-movant must set forth specific facts showing there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). At this stage, the court does not evaluate the credibility of witnesses, weigh the evidence, or resolve factual disputes. *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263 (5th Cir. 1991), *cert. denied*, 502 U.S. 1059 (1992). However, if the evidence in the record is such that a reasonable jury, drawing all inferences in favor of the non-moving party, could arrive at a verdict in that party's favor, the motion for summary judgment must be denied. *Int'l Shortstop, Inc.*, 939 F.2d at 1263.

On the other hand, the non-movant's burden is not satisfied by some metaphysical doubt as to the material facts, or by conclusory allegations, unsubstantiated assertions, or a mere scintilla of evidence. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). Summary judgment is appropriate if the non-movant "fails to make a showing sufficient to establish the existence of an element essential to that party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). In other words, summary judgment will lie only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits if any, show that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law." *Sherman v. Hallbauer*, 455 F.2d 1236, 1241 (5th Cir. 1972).

### III. DISCUSSION

#### A. Official Capacity Claims

Defendants contend that they are entitled to Eleventh Amendment immunity insofar as Plaintiff sued them in their official capacity for damages. (Doc. 16-1 at p. 4). The Court agrees.

The Eleventh Amendment to the United States Constitution bars a state's citizens from filing suit against the state in federal court unless the state has waived its immunity. *Cozzo v. Tangipahoa Parish Council—President Government*, 279 F.3d 273, 280 (5th Cir. 2002). As the United States Court of Appeals for the Fifth Circuit has noted: "By statute, Louisiana has refused any such waiver of its Eleventh Amendment sovereign immunity regarding suits in

federal courts." *Cozzo,* 279 F.3d at 281 (citing La. Rev. Stat. § 13:5106(A)). Similarly, a suit for retrospective relief against a state official in his official capacity is treated as a suit against the state itself, and is likewise barred by the Eleventh Amendment. *Hafer v. Melo,* 502 U.S. 21, 25 (1991) (suits brought against a state official in his official capacity "generally represent only another way of pleading an action against an entity of which an officer is an agent") (internal quotations omitted) (quoting *Kentucky v. Graham,* 473 U.S. 159, 165 (1985)).

Based on these principles of law, Plaintiff's claims against Defendants in their official capacities are really claims against the state, and thus, are barred by the Eleventh Amendment. Moreover, Defendants did not consent to suit in this forum through removal or otherwise waive their sovereign immunity from suit in federal court. *See, e.g., Meyers ex rel. Benzing v. Texas,* 410 F.3d 236, 256 (5th Cir. 2005) (state waives its Eleventh Amendment sovereign immunity by removing case to federal court). Accordingly, the Court must grant summary judgment in favor of Defendants as a matter of law to the extent that Plaintiff seeks relief from Defendants in their official capacities because such claims are barred by the Eleventh Amendment.

**B.    Failure to Protect Claim Under § 1983**

Unlike official capacity claims, Defendants do not enjoy absolute immunity with respect to Plaintiff's failure to protect claims against them in their individual capacities.

5

It is well-established that the Eighth Amendment's proscription against cruel and unusual punishment affords inmates a measure of protection from violent attacks by other inmates. *See Smith v. Wade*, 461 U.S. 30 (1983). To recover on a failure to protect claim under § 1983, a plaintiff must show (1) that he was incarcerated under conditions that posed a substantial risk of serious harm to his safety, and (2) that the defendants were deliberately indifferent to his need for protection. *Farmer v. Brennan*, 511 U.S. 825 (1994). To act with deliberate indifference, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. However, prison officials will not be held liable for failure to protect if (1) "they were unaware of even an obvious risk to inmate health or safety," (2) "they did not know of the underlying facts indicating a sufficiently substantial dangerous," (3) "they know of the underlying facts but believed (albeit unsoundly) that the risk to which the facts gave rise was insubstantial or nonexistent," or (4) "they knew of a substantial risk to inmate health or safety . . . [and] responded reasonably to the danger, even if the harm was not ultimately averted."

In his Complaint, Plaintiff alleges that he was the victim of an attack by another inmate. (Doc. 1 at p. 7). Plaintiff further asserts that Defendants were on notice of "bad blood" between he and inmate Landry because the two engaged

in two separate fist fights in January of 2012.[3] (Doc. 1 at ¶ 8). On February 1, 2012, Warden Benjamin and Colonel Darbonne met with Landry about the letters and the fights. (*Id.*). After speaking with Landry, they then allegedly "told [Landry] to go and get Plaintiff from down the walk." (*Id.*). Plaintiff alleges that he went to Warden Benjamin's office and confirmed that the letters were accurate in that he and Landry had engaged in two fist fights. (*Id.* at ¶ 9). As a result of these altercations, Defendants allegedly separated Plaintiff and Landry by moving Plaintiff to a different dormitory that same day. (*Id.*). However, Plaintiff avers that Defendants did nothing to alter his or Landry's work assignments, both of which were assigned to jobs in the Interfaith Chapel. (*Id.*).

Plaintiff alleges that four days later, on February 5, 2012, Captain Mapels let him into the Interfaith Chapel for work at 4:30 a.m. (*Id.* at ¶ 10). He avers that Landry arrived thirty minutes later. (*Id.*). Plaintiff alleges that Landry then attacked him with a "homemade knife," cutting Plaintiff and "brutally beat[ing] Plaintiff with a closed fist." (*Id.*). Plaintiff avers that he sustained several cuts and required serious medical attention. (*Id.*). Indeed, Plaintiff alleges that the cut sustained to his neck was "so bad" that he nearly died. (*Id.*). Plaintiff avers that he suffers nightmares as a result of the attack by his "known enemy," and that he has been prescribed medication to address his mental health needs in the aftermath of the alleged assault. (*Id.*).

---

[3] Plaintiff also alleges that Warden Benjamin and Colonel Darbonne "received five (5) letters about the 'fist fights'" prior to speaking with Landry on February 1, 2012. (Doc. 1 at ¶¶ 8, 9). However, Plaintiff does not provide any specific information about who authored the letters or the contents.

In response, Defendants have put forth substantial summary judgment evidence concluding that Plaintiff was the aggressor in the fight on February 5, 2012, and that Landry's injuries were substantially more severe than Plaintiff's. Even without such evidence, however, Defendants aver that Plaintiff's claims are barred under the principle elucidated by the United States Supreme Court in *Heck v. Humphrey*, 512 U.S. 477 (1994), and its progeny, namely that "civil tort actions are not appropriate vehicles for challenging the validity of outstanding criminal judgments." *Id.* at 486. (Doc. 16-1 at p. 5).

In *Heck*, the Supreme Court held that any claim that effectively attacks the constitutionality of a conviction does not accrue until that conviction has been "reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such a determination, or called into question by a federal court's issuance of a writ of habeas corpus." *Heck*, 512 U.S. at 486-87. *See also Clarke v. Stalder*, 154 F.3d 186, 189 (5th Cir. 1998) (prohibiting an inmate from bringing claims for damages and reinstatement of good time credits until his "conviction" had been declared invalid). Moreover, if a favorable judgment would "necessarily imply the invalidity of [the prisoner's] conviction or sentence," the claim is not cognizable. *Heck*, 512 U.S. at 487. Thus, unless the plaintiff can prove that one of the above criteria is met, his claims against Defendants in their individual capacities are not cognizable and must be dismissed. *See Cronn v. Buffington*, 150 F.3d 538, 541 (5th Cir. 1998).

8

Plaintiff filed the instant action to recover damages on a theory that Defendants failed to protect him from inmate Landry. (Doc. 1). However, as a result of Plaintiff's skirmish with Landry, Plaintiff ultimately pled *nolo contendere* to Aggravated Second Degree on July 12, 2012. (Doc. 16-4). Notwithstanding the fact that the uncontested summary judgment evidence suggests that Plaintiff was the aggressor, any award of damages here would undermine Plaintiff's conviction. More specifically, any attempt by Plaintiff to argue that he was not the aggressor, and instead, acted in self-defense, would undermine his aggravated battery conviction. Accordingly, Plaintiff's claims are barred under *Heck*.

Further, although Plaintiff did not file an opposition to the instant motion, any argument that he pled *nolo contendere*, as opposed to pleading guilty or being convicted at a trial on the merits, would be similarly unavailing. It is well-established in Louisiana that "[a] plea of nolo contendere is not technically a plea of guilty, but it is one in substance if accepted by the court; for when so accepted, it becomes an implied confession of guilt." *Louisiana State Bar Ass'n v. Connolly*, 206 La. 883, 890-91, 20 So. 2d 168, 170 (1944) (emphasis added) (citations omitted). In addition, a *nolo* plea traditionally "has no effect beyond the particular case, and it can not be employed against the defendant as an admission in any civil suit for the same act. In other words it does not [typically] estop the defendant to plead and prove his innocence in a civil action." *Id.* While true, the bar on using a *nolo* plea does not govern in the instant action because

"[w]hether the conviction was obtained at trial, by a guilty plea, or by a *nolo* plea is irrelevant" to the inquiry as to whether Plaintiff's 1983 claim would necessarily imply the invalidity of his conviction. *Hernandez v. Boles*, 184 F.3d 819 (5th Cir. 1999).

In *Hernandez*, the Fifth Circuit rejected a plaintiff's argument that Texas law prevented the use of a *nolo contendere* plea in a civil case as an admission. *Id.* (finding that plaintiff's objection "misse[d] the mark."). Indeed, the court found that in considering a defense under *Heck*, a court need not consider the plea as evidence at all; instead, the court need only look to whether an implicated conviction has been overturned. *Id.* (citing *Heck*, 512 U.S. at 486-87). *See also Ballad v. Burton*, 444 F.3d 391, 396-97 (5th Cir. 2006) (applying *Heck* to a conviction obtained pursuant to an *Alford* plea). The Court finds this reasoning equally applicable here. For purposes of the instant claims, Plaintiff's plea of *nolo* is not different than that of a guilty plea or of a conviction at trial.

Because any decision by this Court regarding the constitutionality of Plaintiff's conviction would "necessarily imply" its invalidity, Plaintiff cannot state a claim upon which relief can be granted until he successfully challenges his conviction. Therefore, Plaintiff's claims must be dismissed until such time, if any, the requirements of *Heck* are met.

C. **State Law Claims**

Finally, to the extent that Plaintiff seeks to invoke the supplemental jurisdiction of this Court over potential state law claims, a district court is

authorized to decline the exercise of supplemental jurisdiction if the claims raise novel or complex issue of state law, if the claims substantially predominate over the claims over which the district court has original jurisdiction, if the district court has dismissed all claims over which it had original jurisdiction, or for other compelling reasons. 28 U.S.C. § 1347.

Considering the allegations in Plaintiff's Complaint and the dismissal of Plaintiff's federal claims in the instant Ruling, the Court declines the exercise of supplemental jurisdiction over Plaintiff's state law claims.

## IV. CONCLUSION

Accordingly,

**IT IS ORDERED** that Defendants' Motion for Partial Summary Judgment is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff's federal claims be **DISMISSED** with prejudice, and Plaintiff's state law claims be **DISMISSED** without prejudice.

Baton Rouge, Louisiana, this 20th day of May, 2015.

_____
BRIAN A. JACKSON, CHIEF JUDGE
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA